[Civ. No. 3868. First Appellate District, Division One.—August 16, 1921.]

## G. N. WILLIAMSON, Appellant, v. B. F. MARSHALL et al., Respondents.

[1] CORPORATIONS—AGREEMENT TO REPURCHASE STOCK—SPECIFIC PERFORMANCE.—When a corporation enters into a contract with an intending purchaser of stock, by which it obligates itself to take back the stock, paying the fair value therefor, should the purchaser be dissatisfied with the conduct or management of the business, such an agreement is enforceable by the purchaser.

[2] ID.—AGREEMENT BY STOCKHOLDERS TO PURCHASE STOCK—MEASURE OF LIABILITY.—Where the defendants, in an action to recover a sum of money agreed to be paid by them in accordance with the terms of an agreement to purchase plaintiff's stock and give him a sum equal to its reasonable value at the time of the surrender, are the only stockholders, other than plaintiff, and are, therefore, to all intents and purposes, the corporation, and the agreement to purchase plaintiff's stock was entered into at the time of the formation of the corporation, as an inducement to plaintiff to become a stockholder, the liability of such defendants should be measured by the same rules of accountability as though the corporation itself were the defendant.

[3] ID.—BREACH OF AGREEMENT—DAMAGES—PLEADING.—In such action, the plaintiff having alleged that the defendants had promised to pay the fair and reasonable value of the stock, which is stated, and for which, when determined by the court to be fair and reasonable, judgment is prayed, it is unnecessary to allege that plaintiff had been damaged in such sum.

APPEAL from a judgment of the Superior Court of Alameda County. T. W. Harris, Judge. Reversed.

---

1. Right of corporation to purchase its own shares of stock, notes, 17 Ann. Cas. 1261; Ann. Cas. 1914B, 1016; 25 L. R. A. (N. S.) 50; 30 L. R. A. (N. S.) 694; 44 L. R. A. (N. S.) 156.

The facts are stated in the opinion of the court.

Francis V. Keesling and C. A. S. Frost for Appellant.

L. Seidenberg, A. P. Crist and Fabian H. Hillebrandt for Respondents.

WASTE, P. J.—The plaintiff appeals from a judgment entered in favor of the defendants, after demurrer sustained without leave to amend. While the demurrer attacks a number of alleged defects in the complaint, none of the special assignments would have justified it being sustained without leave to amend. Consequently the main question to be considered upon this appeal is the sufficiency of the complaint to state a cause of action.

Concisely stated, it is alleged that the plaintiff and the defendants entered into an agreement for the formation of a corporation to be known as the California Food Specialty Company, to take over the business and property of an insolvent firm of which defendant Marshall was at the time the liquidating partner. It was agreed that the corporation should have an authorized capital stock of $30,000; that plaintiff should purchase one-third of such stock for the sum of $10,000, at par; that defendant Palmer should sell and deliver to the corporation certain land which she would buy for that purpose from the insolvent firm, together with the buildings and equipment thereon, she to take in payment 200 shares of the stock of the corporation of the par value of $20,000, the plan being that plaintiff and defendants would own and hold, upon the completion of the organization, its entire capital stock. As part of the transaction it was agreed that plaintiff should be a director and officer of the company, at a compensation of $225 per month, and should, jointly with the defendant Marshall, have control and management of the executive affairs of the corporation. It was further agreed between the parties that if the plaintiff disagreed with the defendants about the conduct or management of the business, or should become dissatisfied with the acts of the defendant Marshall, or disagree with him concerning those matters, the defendants would at any time, upon demand of the plaintiff, purchase from him all of his 100 shares of the capital stock of the corpora-

tion at the fair value of said shares. This offer, which was not in writing, was accepted by the plaintiff, who, at the request of the defendants and in performance of his agreement, forthwith paid $1,000 upon contracts for machinery for the use of the corporation with which to begin business.

The corporation was organized according to the agreement. Defendant Palmer purchased the real estate, buildings, and equipment from the insolvent copartnership of Post, Marshall & Post, and transferred the property to the California Food Specialty Company, receiving in exchange 200 shares of the stock of the corporation of the par value of $20,000. Plaintiff paid into the treasury of the company the balance of $9,000, due on his part of the agreement, and received 100 shares of the capital stock of the par value of $10,000. Defendant Palmer placed one share of her stock in the name of the defendant Marshall to qualify him, and the corporation was organized with plaintiff and the two defendants as directors. The board of directors elected Marshall president and the plaintiff vice-president, respectively, each with a salary of $225 per month, and by resolution made Marshall as president and plaintiff as vice-president, jointly the managers of the corporation, with all powers usual in such matters.

This arrangement continued for nearly a year, after which time the defendant Marshall ignored plaintiff entirely in the conduct of the business of the corporation. Plaintiff then for the first time became aware that the defendant Palmer had not transferred the property of the insolvent firm to the corporation at the price agreed. Shortly thereafter, by the votes of defendants Marshall and Palmer, over the protest and objection of plaintiff, defendant Marshall was made sole manager of the California Food Specialty Company, and the salary of plaintiff as vice-president was reduced to $25 per month. Being dissatisfied with this arrangement the plaintiff notified the defendants of such fact, and demanded that they purchase from him the 100 shares of stock of the corporation standing in his name, at $125 per share, which price, it is alleged in the complaint, was a fair and reasonable value of the stock at that time. The defendants refused this offer, admitting there was no question about the price for which the stock was offered, but giving as a reason that the business would need more money, which

the defendants would have to furnish. It is alleged that plaintiff's stock is practically worthless in his hands without joint participation in the management and control of the business, which is a close corporation. All of the issued and outstanding shares of stock are owned by the parties to this litigation and no other persons can become interested without purchasing shares from either the plaintiff or defendants. None of the stock is or ever has been on the market, and it has no market value. The prayer is for a decree declaring the fair and reasonable value of the 100 shares of stock standing in the name of the plaintiff on the books of the corporation; that defendants jointly and severally pay plaintiff such sum as the court shall determine to be the fair and reasonable value of the stock, with interest at the rate of seven per cent per annum from the date of the demand for repurchase, upon receiving the certificates duly indorsed by plaintiff, transferable upon the books of the corporation to defendants, and for such other and further relief as to the court may seem equitable, and for costs.

In support of the action of the trial court in sustaining the demurrer, the respondents advance a number of reasons why the contract, as pleaded, should not be specifically performed, but we think the complaint contained a sufficient statement of facts to have warranted the court in overruling the demurrer. [1] The great weight of authority supports the view that when a corporation enters into a contract with an intending purchaser of stock, by which it obligates itself to take back the stock under circumstances like those disclosed here, such an agreement is enforceable by the purchaser. (*Schulte* v. *Boulevard Gardens Land Co.,* 164 Cal. 464, 470, [Ann. Cas. 1914B, 1013, 44 L. R. A. (N. S.) 156, 129 Pac. 582].) In that case an agreement by a corporation obligating itself, at the election of the stockholders, to repurchase the stock at a stated price, was under consideration, and the court at page 468 said: "The plaintiff is seeking to enforce a part of an entire contract under which the stock was originally issued to him. The right to return the stock and to receive the sum agreed to be paid upon such return was a material and indivisible part of the consideration upon which the plaintiff agreed to become a stockholder. As between the parties, it would be manifestly un-

just to permit the corporation to retain the money paid by plaintiff, and at the same time to repudiate the promise which it gave in exchange for the money. The obligation to pay, upon a return of the shares, the sum agreed to be paid, is not to be viewed as a new undertaking, arising after the plaintiff has assumed the relation of stockholder. It came into being coincidentally with the contract by which plaintiff became a stockholder.''

[2] In this case it would be hard to disassociate the defendants from the corporation. They were, in fact, the corporation which they formed as a convenient method of taking over the property and affairs of the defunct partnership. As an inducement to the plaintiff to engage with them in the enterprise the defendants agreed that the plaintiff, if dissatisfied, might return his stock and receive a sum equal to its reasonable value at the time of the surrender. Under the fact, we think the liability of the defendants should be measured by the rules of accountability as though the corporation itself were the defendant. The sole purpose of the present action, notwithstanding the form of the prayer of the complaint, is to recover from the defendants the sum of money agreed to be repaid, in accordance with the terms of the agreement. The tender of the return of the stock, if such tender was necessary, left nothing to be done by the plaintiff. The consideration had passed to the obligor, and the only duty imposed upon the defendants was the obligation to repay the sum of money specified. (*Dickinson* v. *Zubiate Mining Co.,* 11 Cal. App. 656, 662, [106 Pac. 123]; *Hellings* v. *Heydenfeldt,* 107 Cal. 577, [40 Pac. 1026].) The facts bring the case within the provision of section 3302 of the Civil Code, which provides that ''The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon.'' We do not think it matters, as urged by the respondents, that the plaintiff has not followed the usual and ordinary form of alleging his damage. Under our code there is but one form of action, and if the complaint states facts which entitle the plaintiff to relief, either legal or equitable, it is not demurrable upon the ground that it does not state facts sufficient to constitute a cause of action. (*Whitehead* v. *Sweet,* 126 Cal. 67, 73, [58 Pac. 376].) ''When the plaintiff, as

here, alleges facts to exist, which, if proved, would entitle him to recover the sum of money he demands from the defendant, he has shown, so far as the recitals of the complaint can, that he has sustained damages.'' (*Bartlett* v. *Odd Fellows' Sav. Bank*, 79 Cal. 218, 223, [12 Am. St. Rep. 139, 21 Pac. 743].) **[3]** Having alleged that the defendants had promised to pay the fair and reasonable value of the stock, which is stated, and for which, when determined by the court to be fair and reasonable, judgment is prayed, it was unnecessary to allege that plaintiff had been damaged in such sum. (*Dickinson* v. *Zubiate Mining Co.*, 11 Cal. App. 656, 663, [106 Pac. 123].)

The judgment is reversed. The cause is remanded to the lower court, with directions to overrule the demurrer and make such further order as may be proper.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 13, 1921.

All the Justices concurred, except Shaw, J., who was absent.